## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CASE NO.:5:18-cv-366-FL

| | |
|---|---|
| JAMES ALLEN POINDEXTER, JERRY JONES, GREGORY HOLT, AND THE CONSTITUTION PARTY OF NORTH CAROLINA,<br><br>**Plaintiffs,**<br><br>v.<br><br>KIM WESTBROOK STRACH in her official capacity as the Executive Director of the North Carolina State Board of Elections and Ethics Enforcement,<br><br>**Defendant.** | **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

COME NOW the Plaintiffs by and through counsel pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rules 7.1, 7.2, and 10.1 and hereby submit this Memorandum of Law in Support of Their Motion for Preliminary Injunction as to Defendant and state as follows:

### I.    NATURE OF THE CASE

Plaintiffs filed their Verified Complaint against Defendant on July 20, 2018 initiating this above-captioned action. (ECF Doc. 1)  A summons was issued by the Court on July 23, 2018. (ECF Doc. 5)  Defendant's counsel entered his Notice of Appearance on August 1, 2018 (ECF Doc. 6). Plaintiff's obtained service by certified mail on Defendant on August 2, 2018. (ECF Doc. 9). Plaintiffs filed their Motion for Preliminary Injunction on August 7, 2018, and submitted this Memorandum in support thereof.

### II.    FACTS

On or about June 6, 2018, the Constitution Party of North Carolina (the "Constitution Party") became a recognized political party under the election laws of North Carolina. (Compl. ¶

10.)  The Constitution Party, through its representatives, timely filed with the State Board of Elections and Ethics Enforcement more than the required amount of petition signatures, as well as more than 200 signatures from more than three (3) congressional districts. (*Id.*) The State Board of Elections and Ethics Enforcement then voted unanimously to recognize the Constitution Party as the state's newest political party. (*Id.*)  The Constitution Party's core political values are: (1) the Right to Life; (2) Religious Freedom; (3) the Traditional Family; (4) Private Property Rights; (5) Pro-Second Amendment; (6) Anti-Socialism; and (7) Pro National Sovereignty. (*Id.* at 4.) The purpose of Constitution Party is to influence public policy by a variety of means including running candidates for public office and disseminating its views on public policy issues through its campaigns, among others. (*Id.*)

Prior to the Constitution Party becoming recognized under the elections laws of North Carolina on June 6, 2018,  no voter in North Carolina could affiliate with the Party in that voter's registration. (*Id.* at 11-12.)  After the Constitution Party became recognized as a political party, it held its nominating convention pursuant to the election law of North Carolina and then, prior to June 20, 2018, submitted its candidates to the Defendant via the North Carolina State Board of Elections and Ethic Enforcement. (*Id.* at 17-18.)  The Defendant accepted candidates of the Constitution Party. (*Id.* at 18.)  Among those Constitution Party candidates were James Allen Poindexter, Jerry Jones, and Greg Holt. (*Id.*) Prior to the recognition of the Constitution Party as a political party under the North Carolina election law, a candidate who wished to run as a Constitution Party candidate either could not run or, alternatively, had to run as an unaffiliated candidate. (*Id.* at 11.) Likewise, voters could not register to vote as a Constitution Party of North Carolina voter. (*Id.*)

Primary elections in North Carolina for 2018 occurred on May 8, 2018 with options for second primaries occurring after on June 27, 2018, or July 17, 2018 depending on whether a

federal office in the state required a second primary or not. (*Id.* at 13.) Prior to the Constitution

Party gaining ballot access, Plaintiff Poindexter ran for the office for North Carolina House of

Representatives, District 90, in the Republican Party primary election and lost. (*Id.* at 14.)

Similarly, Plaintiff Holt ran for office for Craven County Board of Commissioners, District 1, in

the Republican Party primary election and lost. (*Id.* at 15). Also, Plaintiff Jones ran for office for

Greene County Board of Commissioners, District 3, in the Democratic Party primary election

and lost. (*Id.* at 16.) Pursuant to the election laws governing newly recognized parties, the

Constitution Party was not permitted to participate in the primary elections and was required to

nominate its candidates by convention. (*Id.* at 17.) The Constitution Party held its convention

and submitted its candidates for office which included Plaintiffs Poindexter, Holt, and Jones who

were accepted by Defendant via the State Board of Elections and Ethics Enforcement. (*Id.* at 18.)

On or about June 5, 2018 the North Carolina General Assembly passed legislation that in

part modified the provisions of the election law governing the participation of new political

parties in the general election: Senate Bill 486, "AN ACT TO MAKE VARIOUS CHANGES

RELATED TO ELECTION LAWS."(*Id.* at 19.) Senate Bill 486 stated that, "An individual

whose name appeared on the ballot in a primary election preliminary to the general election shall

not be eligible to have that individual's name placed on the general election ballot as a candidate

for the new political party for the same office in that year." (*Id.* at 21.)

Senate Bill 486 went to the Governor for signing or for veto. (*Id.* at 19.) On or about

June 15, 2018, the Governor vetoed Senate Bill 486 and stated that "**Continued election**

**meddling for partisan advantage weakens public confidence.**" (*Id.*) (emphasis added).

Additionally, even members of the General Assembly stated that, "Doing this [changing the

election law on running as a candidate of a new party during the election process] at this time

bears an appearance that it may be targeting specific individuals." (*Id.* at 27.) Another member of the General Assembly stated that "It's just going to make a mess of the system this year. It's not fair to change the rules after the game [the election] has started." (*Id.*)

After the Governor's veto of Senate Bill 486, the North Carolina General Assembly on about June 20, 2018, passed Senate Bill 486 into law, (N.C. Sess. Law 2018-13). (*Id.* at 20.) *After* Plaintiffs had exercised their rights to run as candidates of the Constitution Party of North Carolina in submitting their Notices of Candidacy to Defendant, did the General Assembly pass Senate Bill 486/ N.C. Sess. Law 2018-13 and Defendant enforce such a change prohibiting the exercise of those rights. (*Id.* at 20-22.) *After* the passage of Senate Bill 486/ N.C. Sess. Law. 2018-13, Defendant decertified the Plaintiffs as candidates of the Constitution Party. (*Id.* at 22.)

Prior to the June 20, 2018, veto override by the General Assembly and the Board's subsequent actions of decertifying Plaintiffs as candidates, there was no proscription from a candidate who lost a primary election as a candidate for another political party from becoming a candidate of a new party for the general election.

Plaintiffs' rights have been injured as a direct and proximate result of Defendant's actions. (*Id.* at 23-25.) Plaintiffs Poindexter, Jones, and Holt are directly injured by N.C. Sess. Law 2018-13 retroactively stripping them of their opportunity to run as candidates of the Constitution Party of North Carolina. (*Id.* at 24.) Defendant Constitution Party of North Carolina has been directly injured by not being able to field the candidates that it nominated and approved of at its convention, among others. Furthermore, voters affiliated with Constitution Party of North Carolina have been injured by being deprived of the ability to vote for candidates of the Constitution Party of North Carolina. (*Id.* at 24.) Plaintiffs seek redress for their ballot access rights for the 2018 general election.

## III. ARGUMENT

When a Court is requested to issue a preliminary injunction, it must consider the following four (4) factors: (1) likelihood of success on the merits; (2) likelihood to suffer irreparable harm in the absence of the preliminary injunction; (3) that the balance of equities tips in favor of the movant, and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs bear the burden of establishing that these factors favor granting the injunction. *Manning v. Hunt*, 119 F. 3d 254, 263 (4th Cir. 1997). A preliminary injunction is an extraordinary remedy involving the exercises of a very far-reaching power that is only to be employed in the limited circumstances that demand it. *Winter,* 555 U.S. at 24. Whether to grant this relief is in the sound discretion of the court. *Id.* "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* (quoting *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 542 (1987).

### A. Likelihood of Success on the Merits.

Plaintiffs here are likely to have success on the merits challenging the application of Senate Bill 486/ N.C. Sess. Law 2018-13 (Section 3.4). State elections regulations often "implicate substantial voting, association and expressive rights protected by the First and Fourteenth Amendments." *Pisano v. Strach*, 743 F.3d 927, 932 (4th Cir. 2014). The First Amendment, as incorporated against the states by the Fourteenth Amendment, protects the rights of individuals to associate for the advancements of political beliefs and ideas. *Sarvis v. Alcorn*, 826 F.3d 708, 716 (4th Cir. 2016). It is "beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due

Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (quoting *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)).

The appropriate standard governing constitutional challenges to specific provisions of state election laws begins with the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citations omitted). Election laws that place "severe" burdens upon constitutional rights are subject to strict scrutiny: "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.; see also, Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 184-85 (1979) (severe restrictions must be the least drastic means to serve the compelling interest).

**1. Retroactive Application of Senate Bill 486/ N.C. Sess. Law 2018-13 To Plaintiffs Violates First Amendment Rights and Violates Due Process.**

Retroactivity is disfavored in the law, *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855, (1990) (SCALIA, J., concurring).[1]

---

[1] *See also, e.g., Dash v. Van Kleeck*, 7 Johns. 477, 503 (N.Y. 1811) ("It is a principle in the English common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect"); H. Broom, *Legal Maxims* 24 (8th ed. 1911) ("Retrospective laws are, as a rule, of questionable policy, and contrary to the general principle that legislation by which the conduct of mankind is to be regulated ought to deal with future acts, and ought not to change the character of past transactions carried on upon the faith of the then existing law").

The Supreme Court has stated that, "Retroactive legislation," we have explained, "presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992). If a retroactive law affects only economic concerns, the law must constitute a rational means to serve a legitimate legislative purpose. *See Pension Benefit Guaranty Corporation v. R.A. Gray &* Co., 467 U.S. 717, 730, (1984). Where, however, the retroactive application of a law implicates First Amendment rights, "rigorous adherence" to due process is required lest exercise of those rights be chilled. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).[2]

Additionally, due process contains both substantive and procedural components. *Snider Int'l Corp. v. Town of Forest Heights*, 739 F. 3d 140, 145 (4th Cir. 2014). Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness. *Id.* At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, (1950). Notice and the hearing are two distinct features of due process, and are thus governed by different standards. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Proper notice is "an elementary and fundamental requirement of due process," and must be reasonably calculated to convey information concerning a deprivation. *Mullane*, 339 U.S. at 314; *see also Presley v. City of Charlottesville*, 464 F.3d 480, 490 (4th Cir. 2006). *Mathews* set forth the familiar three-step inquiry for determining the adequacy of the opportunity to be heard: a balancing of the private

---

[2] In his Commentaries on the Constitution, Justice Story reasoned: "Retrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." 2 J. Story, *Commentaries on the Constitution* § 1398 (5th ed. 1891).

interest and the public interest, along with "the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards." 424 U.S. at 335.

Here, Plaintiffs were not provided due process of the decision to decertify their

candidacies for the 2018 general election and the corresponding First Amendments rights noted

above. Instead, the Defendant retroactively stripped the Plaintiffs of their rights and

corresponding liberty interests after previously accepting them. Plaintiffs were not provide fair

notice and nor an opportunity to be heard. Plaintiff's rights were chilled in the midst of the

election process. Additionally, both public and private interest touching upon First Amendments

rights are implicate and have been chilled through the enactment and enforcement of Senate Bill

486/N.C. Sess. Law 2018-13 in these circumstances. The retroactive application of Senate Bill

486/N.C. Sess. Law 2018-13 to deprive rights without an opportunity to be heard is a violation of

Plaintiffs' due process rights. Such a deprivation constitutes an impermissible and severe burden

on Plaintiffs' rights.

Federal substantive due process rights serve as "an absolute check on certain

governmental actions notwithstanding the fairness of the procedures used to implement those

actions." *Front Royal and Warren Cty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275,

287-88 (4th Cir. 1998). Writing for a unanimous Court in *NAACP* v. *Alabama ex rel. Patterson*,

357 U.S. 449, 460 (1958), Justice Harlan stated that it "is beyond debate that freedom to engage

in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty'

assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of

speech." *Anderson v. Celebreze*, 460 U.S. 780, 787 (1983). The Court in *Anderson* noted that

state action can burden two different, although overlapping kinds of rights – "the right of

individuals to associate for the advancement of political beliefs," and the rights of qualified

voters, regardless of their political persuasion, to cast their votes effectively" and that both of

those rights "rank among our most precious freedoms." *Id*. The Supreme Court has also stated

that "The exclusion of candidates also burden voters freedom of association because an election

campaign is an effective platform for the expression of views on the issues of the day." *Id* at 787-

788.

Here, Senate Bill 486/ N.C. Sess. Law 2018-13, was passed <u>after</u> the nominating

convention of the Constitution party of North Carolina, <u>after</u> the filing of Notices of Candidacy

by Plaintiffs Poindexter, Jones and Holt, and <u>after</u> the acceptance of said candidates by

Defendant. Even lawmakers in the General Assembly noted that the legislation was targeted at a

few individuals in light that it passed during an ongoing election process. Defendant Strach then

applied the new standard to Plaintiffs. The passage and application of the non-uniform standard

during an election to target the candidates of the Constitution Party reveals a fundamental

unfairness and disenfranchises the Plaintiffs' rights as well as voter rights to choose a

Constitution Party candidate who espouses their views. It excludes Plaintiffs and burdens voters

freedom of association. *See Anderson*,460 U.S. at 787-788. It violates the liberty interests and

free speech interests which are most precious freedoms guaranteed by the Constitution. *Id.* It

constitutes a severe burden on Plaintiffs' rights.

Senate Bill 486/ N.C. Sess. Law 2018-13 and its enforcement by Defendant, touches

upon sensitive areas of basic First Amendment freedoms of association and speech. It revokes

the rights which were being exercised by minority parties and, thereby, strips the minor party and

its candidates of pre-existing ballot access rights which are guaranteed under the First

Amendment and thus, places a severe burden on the rights of the Plaintiffs. Rigorous adherence

to the Due Process Clause's prior notice requirement is required under law. *See FCC v. Fox*

*Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012). Since Senate Bill 486/ N.C. Sess. Law

2018-13 took effect after the Constitution Party's nominating convention and after the Defendant

had accepted the candidacies of Plaintiffs it has failed to provide proper notice under these

circumstances. Defendant, through enforcement of Senate Bill 486/ N.C. Sess. Law 2018-13, has

moved the proverbial goal post in the midst of the game. Stripping Plaintiffs of the opportunity

to participate in the 2018 general election in these circumstances is patently unfair and unlawful.

Plaintiffs have a protected interest and at the least, a legitimate expectation of participation in the

2018 general election based upon the process which was in place on June 19, 2018, prior to the

targeted application of Senate Bill 486/ N.C. Sess. Law 2018-13 to the Plaintiffs.

The Supreme Court has emphasized the First Amendment's strong aversion to retroactive

legislation and enforcement. *FCC v. Fox Television Stations*, 567 U.S. 239 (2012). *Fox* involved

a new policy that punished even fleeting expletives on the airways. *Id.* However, the prior FCC

policy had tolerate occasional vulgarity like which occurred on three (3) Fox and ABC programs

at issue in the case. *Id.* Despite the fact that the new policy was announced and enforced after the

fleeting vulgarities, the FCC chose to punish the two (2) television stations: Fox and ABC. *Id.*

The Supreme Court decided that the FCC could not retroactively punish the television stations

for doing something not prohibited before the prohibition went into effect. *Id.* at 258. The Court

reasoned that: "A fundamental principle in our legal system is that laws which regulate persons

or entities must give fair notice of conduct that is forbidden or required." *Id.* at 253. *See also*,

*Papachristou v. Jacksonville*, 405 U. S. 156, 162, (1972) ("Living under a rule of law entails

various suppositions, one of which is that '[a]ll persons are entitled to be informed as to what the

State commands or forbids' " (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453,

(1939);(alteration in original)). The Commission's lack of notice to Fox and ABC that its interpretation had changed so the fleeting moments of indecency contained in their broadcasts were a violation of [the law] as interpreted and enforced by the agency "fail[ed] to provide a person of ordinary intelligence fair notice of what is prohibited." *Id. (quoting U.S. v. Williams*, 553 U.S. 285,304 (2008). "This would be true with respect to a regulatory change this abrupt on any subject, but it is surely the case when applied to the regulations in question, regulations that touch upon "sensitive areas of basic First Amendment freedoms," *Id.* (quoting *Baggett* v.*Bullitt*, 377 U. S. 360, 372, (1964).

Here, again, Senate Bill 486/ N.C. Sess. Law 2018-13 and, Defendant's enforcement thereof, certainly touches upon sensitive areas of basic First Amendment freedoms; it provided no prior notice; and it effectively chilled the rights of the Plaintiffs in regard to the 2018 general election in these circumstances.

Other courts have echoed that due process protects against voting restrictions that render the election and voting processes unjust or discriminatory. *See Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) (stating that the "Due Process Clause protects against extraordinary voting restrictions that render the voting system fundamentally unfair.") Although "garden variety election irregularities do not ordinarily rise to a constitutional level, "substantial changes to the state election procedures and/or implementation of non-uniform standards run afoul of due process if they result in disenfranchisement and vote dilution. *Id.* Also, in *Nader 2000 Primary Committee, Inc., v. Hechler*, 112 F. Supp.2d 575 (S.D.W.V. 2000), the court granted an preliminary injunction to an election law change in "the midst of the 2000 general election cycle which resulted in this imposition of different requirements on candidates for the same office." *Id.* at 577. In that case, West Virginia increased the number of signatures

required by independent candidates to qualify for the presidential ballot on July 11, 1999, fifteen

(15) months before the election. *Id.* Because one candidate, however, had already qualified

under the old number, the court enjoined application of the new requirement. *Id.* Forcing a

second candidate, Nader, to qualify under a new number, it reasoned, would be unfair. *Id.* at 580.

In *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), the court noted that where election law

changes "induce[d] voters to miscast their votes," as an example of an improper "substantial

change." *Id.* at 1056.  In *Griffin,* candidates and voters in a local, Rhode Island primary relied on

a state statute authorizing the use of absentee and shut-in ballots in all local "elections." *Id.* The

Secretary of State, reading the statute to include primary elections, issued absentee ballots to

primary voters. *Id.*  Ultimately, the Rhode Island Supreme Court ruled that this was an incorrect

interpretation of Rhode Island's law. *Id.*  Suit was filed in federal court challenging the

retroactive application of the Rhode Island Supreme Court's decision, and the District Court

granted a preliminary injunction. *Id.; see also, Griffin v. Burns,*431 F. Supp. 1361 (D. R.I. 1977).

The First Circuit affirmed and stated that:

> [Plaintiffs] do not contend that Rhode Island was constitutionally required to provide
> for absentee or shut-in voting in party primaries.... Nor do they challenge the
> authority of the Rhode Island ... to preclude such voting. Their claim is simply that
> Rhode Island could not, constitutionally, invalidate the absentee and shut-in ballots
> that state officials had offered to the voters in this primary, where the effect of the
> state's action had been to induce the voters to vote by this means rather than in person.
> The state's action is said to amount—in result, if not in design—to a fraud upon the
> absent voters, effectively stripping them of their vote in the primary.

*Griffin*, 570 F.2d at 1074 (citation omitted). Rhode Island's change in its primary election law,

which would have been lawful if announced in advance of the election cycle, therefore, violated

the rights of the candidates (and voters) who had relied on Rhode Island's stated primary process.

*Id.* at 1069.

Furthermore, when passing legislation late in an election cycle that changes ballot access requirements or restrictions, states and courts have avoided retroactive application of new rules because of patent unfairness present when changing election rules in the election process. *See Hudler v. Austin,* 419 F. Supp. 1002 (1976), *affirmed*, 430 U.S. 924 (1977) (where a three-judge panel did not apply the 1976 change in the Michigan statutes which required minor parties to equal or exceed 0.3% of one (1) percent of the total votes cast in the primary to gain access to the general election ballot). Also, in *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970), nominating papers for city alderman elections were invalidated by the Chicago Board of Election Commissioners the day before a scheduled election. *Id.* at 1051-52. The commissioners applied a new rule that prohibited duplicate signatures and middle initials. *Id.* The Seventh Circuit ruled that the candidates had been unconstitutionally denied the right to fairly participate in the elections within the meaning of the First Amendment by the retroactive change. *Id*. at 1058. Also, in *Libertarian Party of Ohio v. Husted*, 2014 U.S. Dist. LEXIS 187771 (S.D. Ohio 2014), the Court enjoined the retroactive enforcement of an election law for the 2014 election cycle which prevented minor parties from the ballot and required them to start from scratch in their petition efforts.  The Court stated that "The issue is not whether Plaintiff have a specific constitutional right to appear on the primary ballot." *Id.* at *7. "Rather, it is whether due process fairness requires them to be placed on the 2014 primary ballot in these circumstances." *Id.*

Here, the changing of election rules in the middle of the election process has disenfranchised Plaintiffs and has placed a severe burden on those candidates and the rights of voters who support them and the Constitution Party of North Carolina. Defendant has engaged in retroactive enforcement of legislation that is targeted at certain individuals and which failed to give notice and failed to give the Plaintiffs the right to participate in the 2018 election.

Defendant has moved the goalpost during the elections process violating Plaintiffs rights and the rights of voters. As shown through the application of rules and action by courts in other cases, Defendant's enforcement of Senate Bill 486/ N.C. Sess. Law 2018-13 is not the least restrictive means of achieving the policy objective. A less drastic measure would be to apply the statute after the 2018 general election. As such, Defendant's enforcement of Senate Bill 486/ N.C. Sess. Law 2018-13 severely and impermissibly burdens Plaintiffs' rights under these circumstances.

> **2. Even In Cases Where Sore-Loser Laws Have Been Upheld, Those Laws Gave Fair Notice and Were Not Changed in the Election Process But Had Been Previously Enacted And Were Not Retroactively Applied.**

Plaintiffs recognize that some so-called "sore loser laws" have been upheld in the Fourth Circuit. However in those cases, sore loser provisions were not enacted and enforced during the election process. *See S.C. Green Party v. S.C. State Election Com'n*, 612 F. 3d 752 (2010) (where in 2008, a minor party candidate in a fusion election was prohibited from running as the Green Party candidate based upon South Carolina's sore-loser statute which had been in effect since 1982); *see also*, *Backus v. Spears*, 677 F. 2d 397 (1982) (where a loyalty oath prevented an independent candidate who had previously lost in a primary from running as an independent in the 1981 general election whereby the statutory proscription had been in place at least since 1977). Similarly, the Supreme Court has upheld sore loser provisions in applying independent or minor candidates where the parties had notice of the laws proscriptions. *Storer v. Brown*, 677 U.S. 724 (1974) (upholding a sore-loser provision which was applied to a candidate's 1972 campaign which was enforced at least by 1971 when it was cited by the Supreme Court and which was initially enacted in 1962). What is key in those cases is that the **challengers to those provisions had fair notice of what was proscribed**. Such laws were not enacted and enforced during the election process.

Conversely, in the case at bar, Senate Bill 486/ N.C. Sess. Law 2018-13 was enacted and enforced <u>after</u> Plaintiffs acted upon a right and then had that right chilled. Plaintiffs had no notice of the proscription because the law was passed, over the Governor's veto, <u>after</u> the Plaintiffs had submitted their Notices of Candidacy and their candidacies were accepted by Defendant. Only <u>after</u> the passage of Senate Bill 486/ N.C. Sess. Law 2018-13, were the Plaintiff's rights retroactively revoked. Plaintiffs have expended time and resources to qualify for the ballot and had a legitimate expectation that having complied with the process that was in place, they would have the opportunity to reap the political benefits of running candidates and running as candidates in the 2018 general election. Stripping Plaintiff of the opportunity to participate in the 2018 general election in these circumstances severely burdens Plaintiffs' First Amendment rights and is patently unfair. And therefore, Plaintiffs' are likely to have success on the merits.

**B. <u>Likelihood of Irreparable Harm To Plaintiffs</u>**

An applicant must demonstrate that in the absence of a preliminary injunction, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. *Winter*, 555 U.S. at 22. A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. *Id.*

Here, Plaintiffs have suffered and will continue to suffer harms to their First Amendment rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (stating that "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury.") The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization. *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 214 (1986). The right to associate with the political party of one's choice is an integral party of this basic constitutional freedom. *Id.* (quoting *Kusper v. Pntikes*, 414 U.S. 51, 57 (1973)). The Supreme

Court has stated that the freedom to join together in furtherance of common political beliefs "necessarily presupposes the freedom to identify the people who constitute the association." *Id.* (quoting *Democratic Party of U.S. v. Wisc. Ex re. LaFollette*, 450 U.S. 107, 122 (1981)). And, any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents. *Democratic Party of U.S. v. Wisc. Ex re. LaFollette*, 450 U.S. 107, 122 (1981).

Here, the Defendant's enforcement of Senate Bill 486/ N.C. Gen. Stat 2018-13 chills the freedoms guaranteed by the First and Fourteenth Amendment because the law snuffs out the rights of the Constitution Party and the associational rights of its candidates and of voters (regardless of political affiliation) and of party members and supporters from engaging in the marketplace of ideas and running candidates and supporting candidates, and running as candidates while espousing the views of the Constitution Party platform.  Plaintiffs Poindexter, Jones, and Holt are prevented from running as candidates with the Constitution Party, despite previously acceptances of their candidacies and have been prevented access to the ballot and likewise their associational rights and First Amendment rights have been chilled.

Party labels provide a shorthand designation of the views of party candidates on matters of public concerns and the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise. *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986).  Here, the Defendant's enforcement of Senate Bill 486/ N.C. Gen. Stat 2018-13, prevents Plaintiffs from running as candidates for the Constitution Party and prevents them from providing their views and the Constitution Party's views as an option for the public.  The Supreme Court stated in *Anderson v. Celebrezze, 460 U.S. 780, 768-88 (1983),* that the primary concern in assessing restrictions on ballot access by candidates is the interest of the voters who supports that candidate and the views espoused by the

candidate. The voter interests at stake are basic associational rights secured against state action by the First and Fourteenth Amendments, and any restriction on ballot access by candidates necessarily burdens the rights of their supporters to some extent. *Anderson*, 460 U.S. at 786-87. Additionally, courts have routinely deemed restrictions on fundamentals voting rights as irreparable injury. *See League of Women Voters of N.C. v. N.C.*, 769 F. 3d 224, 247 (4th Cir. 2014); *Obama for Am. V.* Husted, 697 F.3d 423, 436 (6th Cir. 2012). Here, the loss of First Amendment freedoms of Plaintiffs to espouse their points of view and limitations on their rights and rights of voters, for even minimal periods of time unquestionably constitutes irreparable injury to the Plaintiffs. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976)

## C. <u>Balance of Equities is Strongly in Favor of Plaintiffs.</u>

The balance of equities favors the Plaintiffs. Plaintiffs have suffered harm to their First Amendment rights and the rights of voters likewise have been harmed as a result as discussed above. Conversely, Defendant will suffer no injury should the Court enjoin the application and enforcement of Senate Bill 486/ N.C. Sess. Law 2018-13 (Section 3.4) for the 2018 general election. North Carolina through Defendant and the State Board of Elections and Ethics Enforcement will be holding elections with candidates from all recognized parties: Republican, Democrat, Libertarian, Green, and Constitution Parties as well as unaffiliated and write-in candidates. There is no evidence of any injury to voters or anyone else should the status quo as for June 19, 2018, be preserved through the issuance of injunctive relief. There is no reason to believe that allowing Plaintiffs to participate and voters to choose, will cause injury to Defendant or to North Carolina voters. *See Anderson*, 460 U.S. at 786-87, (stating that the primary concern in assessing restrictions on ballot access by candidates is the interest of the voters who supports that candidate and the views espoused by the candidate.). Additionally, the injunction would put

the parties in the same position that they were in on June 19, 2018, after the Defendant had accepted the Plaintiffs as candidates for the Constitution Party of North Carolina prior to the passage and enforcement of Senate Bill 486/ N.C. Sess. Law 2018-13 (Section 3.4).  Therefore, the balance of equities favors the Plaintiffs.

### D.  Public Interest.

Preliminary relief will benefit the public because it will ensure that North Carolina's election complies with the First Amendment freedoms guaranteed by the Constitution and ensures that voters will enjoy the choices that they had prior to the passage and enforcement of Senate Bill 486/ N.C. Sess. Law 2018-13 (Section 3.4) and its application to Plaintiffs. Furthermore, protection of Plaintiffs' constitutional rights serves the interests of the public. *See League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 248 (4th Cir. 2014) (quoting *Newsome v. Albermarle Cnty. Sch. Bd.,* 354 F.3 249, 261 (4th Cir. 2003) (stating that "upholding constitutional rights serves the public interest.").

### E.  No Security Required.

As noted by well-recognized authority, the Court may dispense with security altogether if grant of the injunction carries no risk of monetary loss to the defendant." C. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2954.  The Fourth Circuit has observed that security is not mandatory under Rule 65 and can be dispensed with in the discretion of the Court. *See Pashby v. Delia*, 709 F.3d 307, 332 (2013) (stating that the Court may waive such a security requirement but that the Court does need to address it); *see also, Hoechst Diafoil Co. v. Nan Ya Plastics Corp*., 174 F.3d 411, 421 (4th Cir. 1999).   Because the Defendant will suffer no harm, economic or otherwise, no security should be required and Plaintiffs, therefore, request the Court to dispense with such security requirement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court to issue a preliminary injunction against Defendant prevent the removal of Plaintiff's and its candidates: Plaintiffs Poindexter, Jones, and Holt from North Carolina's general elections ballots and prohibit the retroactive application of Senate Bill 486/ N.C. Sess. Law 2018-13 (Section 3.4) to Plaintiffs and their ballot access for North Carolina's 2018 general election.

Respectfully submitted this 7th day of August, 2018.


MARTINEAU KING, PLLC


/s/ S. Mark Henkle
S. Mark Henkle, Esq.
N.C. State Bar No. 49265
P.O. Box. 241268
Charlotte, NC 28224
Tel: 704-247-8525
Fax 704-247-8582
mhenkle@martineauking.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system which sent notification of the same  to all counsel of record in this matter,

including:


Mr. James Bernier, Jr. Esq.
Special Deputy Attorney General
N.C. State Bar No. 45869
Email: jbernier@ncdoj.gov
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
Telephone: (919)716-6900


This 7th day of August, 2018.


MARTINEAU KING, PLLC


/s/ S. Mark Henkle
S. Mark Henkle, Esq.
N.C. State Bar No. 49265
P.O. Box. 241268
Charlotte, NC 28224
Tel: 704-247-8525
Fax 704-247-8582
mhenkle@martineauking.com
*Attorney for Plaintiffs*