IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:18-cv-366

| | |
|---|---|
| JAMES ALLEN POINDEXTER, JERRY JONES, GREGORY HOLT, and THE CONSTITUTION PARTY OF NORTH CAROLINA,<br><br>Plaintiffs,<br><br>v.<br><br>KIM WESTBROOK STRACH, in her official capacity as the Executive Director of the North Carolina State Board of Elections and Ethics Enforcement,<br><br>Defendant. | **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

NOW COMES Defendant, by and through her undersigned counsel, and hereby submits this Memorandum in Response to Plaintiffs' Motion for a Preliminary Injunction pursuant to Local Rules 7.1, 7.2, and 10.1 and this Court's minute entry dated August 9, 2018.

## STATEMENT OF THE CASE

Plaintiffs are three former candidates for state offices in the Republican primary and a "new" political party recognized in North Carolina for the first time in June 2018. The individual Plaintiffs lost the Republican primaries in their respective races and subsequently affiliated with the new political party. Plaintiffs now allege that the United States Constitution requires North Carolina to list them on the ballot as candidates for the same offices, under a different party label. To this end, Plaintiffs sue Defendant under 42 U.S.C. § 1983 and 28 U.S.C. § 1331, asserting that N.C. Session Law 2018-13 violates their due process rights under the Fourteenth Amendment to the United States Constitution by preventing them from running again. Furthermore, Plaintiffs now urge this Court to act with haste even though they belatedly sought an expedited review.

## STATEMENT OF FACTS

The parties do not disagree on the material facts. The individual plaintiffs, James Allen Poindexter, Jerry Jones, and Gregory Holt, were previously affiliated with the Republican Party. They filed for and ran on May 8, 2018 as candidates in the primaries for the offices of North Carolina Houses of Representatives, Craven County Board of Commissioners, and Greene County Board of Commissioners, respectively. They each lost their respective primary races. Subsequent to their respective defeats, the individual Plaintiffs changed their affiliation to the newly recognized Constitution Party of North Carolina, and ran as candidates in that party's convention.

The Constitution Party was formally recognized by the Bipartisan State Board of Elections on June 6, 2018. The Constitution Party submitted its list of candidates for the November General Election, which contained the three individual plaintiffs as candidates for the same offices for which they had previously run unsuccessfully as Republicans.

On June 20, 2018, SL 2018-13 became law. Section 3.4 of the Session Law amended N.C.G.S. § 163A-953, the statute authorizing new parties to submit candidates for inclusion on the general election ballot, by adding that, "An individual whose name appeared on the ballot in a primary election preliminary to the general election shall not be eligible to have that individual's name placed on the general election ballot as a candidate for the new political party for the same office in that year." On June 21, 2018, the State Board informed Poindexter, Holt and Gregory that SL 2018-13 prohibited their inclusion on the November ballot. The individual Plaintiffs were further informed them that "your names will not appear on the ballot and the State Board of Elections & Ethics Enforcement Office will begin the process of returning your respective filing fees." *See* Def Ex A.

2

The statewide general election for both State and federal offices will be held on November 6, 2018 ("2018 general election"). The Uniformed and Overseas Citizens Absentee Voting Act and the Military and Overseas Voter Empowerment Act require that ballots be made available no later than 45 days before an election involving a federal office. 52 U.S.C. 20302(a)(8)(A). State law requires that the Board provide absentee ballots "60 days prior to the statewide general election in even-numbered years." N.C.G.S. § 163A-1305. Therefore, without having to make further modifications to the length of the absentee voting period, the Board must make absentee ballots available to voters by September 7. Before the Board is able to make absentee ballots available, it must prepare the ballots. To properly prepare ballots, the Board must finalize layout, proof and print the ballots, and extensively test them to ensure that each ballot, when it is received, will be correctly read and tallied. This preparation and testing normally takes approximately 30 days.

Plaintiffs filed the instant suit on July 20, 2018. Plaintiffs did not seek a temporary restraining order or move for an injunction in their initial filings. The complaint itself was not served until at least August 2, 2018. Plaintiffs did not move for a preliminary injunction until August 7, 2018. Only on August 10, 2018 did Plaintiffs first seek an expedited review of the case. But for other suits filed in the North Carolina Superior Court, the ballots for the November election would have already been in the process of preparation.[1]

---

[1] Judicial candidates brought two separate suits in the Wake County Superior Court challenging another statute as violating the North Carolina Constitution. They allege that the statute improperly bars their party labels on the ballot. The presiding Superior Court Judge granted the candidates a temporary restraining order, which was followed by a grant of a preliminary injunction on August 13, 2018. (D.E. # 17, Def Ex A and B). Another two matters regarding the ballot will also be heard before a three-judge panel of the Superior Court on August 15, 2018. A TRO or preliminary injunction may be entered in either of those matters as well, further affecting ballot preparation.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 674 (2008) (citations omitted). A movant must establish each of four elements before a preliminary injunction may issue: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). "[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010); *see also Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) ("A plaintiff seeking injunctive relief must satisfy these four factors[.]").

Mandatory preliminary injunctions, such as the one sought by Plaintiffs, do not preserve the status quo and are only granted in very specific circumstances, usually only when extreme or serious damage will result. *See E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir.), *cert. denied*, 543 U.S. 978 (2004); *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) (citing *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)).

## ARGUMENT

Any Order for preliminary injunction should contemplate the four *Winter* factors. Plaintiffs delayed their pursuit of an expedited review, and have failed to establish why the extraordinary remedy of a mandatory preliminary injunction should issue.[2]

---

[2] For the sake of analytical convenience, Defendant assumes but does not concede herein that SL 2018-13 was intended to be retroactive. That determination, however, is also required. *See Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280, 114 S. Ct. 1483, 1505 (1994).

4

## I. PLAINTIFFS ARE REQUIRED TO DEMONSTRATE THE LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Plaintiffs' Cited Authorities Do Not Appear to Address or Resolve Challenges Presented by the Instant Action.

Plaintiffs rely heavily on *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 132 S. Ct. 2307 (2012). But that case addresses a vagueness challenge to a statute regulating programing content. *Fox* concludes that courts should rigorously adhere to the analysis of whether the speech-restricting law (1) made the parties aware of the conduct required of them, and (2) was precise enough to appropriately guide "those enforcing the law". 567 U.S. at 253-54, 132 S. Ct. at 2317 (citing *Grayned v. City of Rockford*, 408 U. S. 104, 108-109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). The Court's conclusion in *Fox* is wholly unrelated to the proposition for which plaintiffs cite this case. *See* D.E. #11 at 7. With its opinion in *Fox*, the Supreme Court does not at all address retroactive legislation.

Similarly, the other cases cited by plaintiff are not on point, fail to acknowledge controlling precedent, or fail to provide a standard applicable to this matter. Like Plaintiffs, the Court in *Libertarian Party of Ohio v. Husted* cited to and relied on *Fox*, which as explained above, did not address retroactive legislation. *See Libertarian Party of Ohio v. Husted,* No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 187771, at *19 (S.D. Ohio Jan. 7, 2014). In *Northeast Ohio Coalition for Homeless v. Husted*, the Sixth Circuit affirmed that "the rejection of thousands of provisional ballots" due to a "well-documented problem of wrong-precinct provisional ballots caused by poll-worker error" was "a likely due process violation." *Ne. Ohio Coal. v. Husted*, 696 F.3d 580, 598 (6th Cir. 2012).

The issue supporting the injunction in *Nader 2000 Primary Comm., Inc. v. Hechler* was not a change in the applicable statute, but rather, a finding of the Supreme Court that certain

5

restrictions on petition circulators was unconstitutional. *Nader 2000 Primary Comm., Inc. v. Hechler*, 112 F. Supp. 2d 575, 579 (S.D. W. Va. 2000) ("Plaintiffs have demonstrated a substantial likelihood of success on the merits in light of the United States Supreme Court's decision in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999), which held Colorado's requirement that initiative petition circulators be registered voters unconstitutional.").

*Griffin v. Burns* addresses whether a change in the interpretation of the word "elections" after an election may result in the discarding of votes already cast by absentee or shut-in ballots without violating the due process rights of the voters, and when a federal court may intervene to remedy an election irregularity. *Griffin v. Burns*, 570 F.2d 1065, 1067-68, 1074-80 (1st Cir. 1978). There, the Court concluded that "the closeness of the election was such that, given the retroactive invalidation of a potentially controlling number of the votes cast, a new primary was warranted." Id. at 1080. In *Hudler v. Austin,* the petition requirements for new party recognition were increased prior to an election. Without conducting any legal analysis or citing any cases, the district court directed that "all parties who would have been eligible based upon compliance with the pre-existing petition requirement" must be placed on the ballot. *Hudler v. Austin*, 419 F. Supp. 1002, 1014 (E.D. Mich. 1976).

In *Briscoe v. Kusper,* a state board changed its interpretation of an existing statute, and applied this new and more restrictive interpretation to candidate petitions. In doing so, the board denied some of the petitions, and those rebuffed candidates brought suit alleging a due process violation due to the board's failure to notify the candidates of the newly adopted interpretation. *Briscoe v. Kusper*, 435 F.2d 1046, 1054 (7th Cir. 1970) ("Plaintiffs' first and principal objection is that the Board's failure to issue guidelines clarifying the statutory standards for nominating

6

petitions contravened due process."). The Seventh Circuit Court of Appeals agreed with plaintiffs, stating that "the application of the new anti-duplication rule to nullify previously acceptable signatures without prior notice was unfair and violated due process." *Briscoe v. Kusper*, 435 F.2d at 1055.

    B.      Retrospective Laws Are Frequently Upheld Against Due Process Challenges by Reliance on Rational Basis.

Plaintiffs are correct that the courts have long held that retrospective laws are disfavored. Nevertheless, when appropriate, such laws are permissibly enforced. The Supreme Court has established that "retrospective laws which do not impair the obligation of contracts, or partake of the character of *ex post facto* laws, are not condemned or forbidden by any part of [the Constitution]." *Satterlee v. Matthewson*, 27 U.S. (2 Peters) 380, 413 (1829). "[O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S. Ct. 2882, 2893 (1976) (superseded by statute) (internal citations omitted). In *Usery*, the Court was unwilling to weigh competing interests to assess the constitutionality of the retroactive legislation. Instead, the Court deferred to legislative judgment and refused "to assess the wisdom of Congress' chosen scheme." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 18-19, 96 S. Ct. 2882, 2894 (1976); *see also* § 15.9(a)(v)Retroactive General Legislation, 2 Treatise on Const. L. § 15.9(a)(v). The Court then applied a rational basis review to uphold the retroactive legislation. *Id.*

The Supreme Court has continued to apply a deferential rational basis review to due process challenges to retrospective civil statutes. This review is applied in matters affecting economic interests and challenges where property and liberty interests are not involved. *See*

7

*Pension Benefit Guar. Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 729, 104 S. Ct. 2709, 2717-18 (1984) ("Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches.") "[T]he burden of proving irrationality rests squarely on the party asserting a due process violation." *Nat'l R. Passenger Corp. v. Atchison, T. & S. F. R. Co.*, 470 U.S. 451, 477, 105 S. Ct. 1441, 1457 (1985).

In this matter, it is questionable whether Plaintiffs have asserted an actionable claim under the Due Process Clause.[3] The Supreme Court has established that a candidate to an elected office does not have a property or liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment. *See Snowden v. Hughes*, 321 U.S. 1, 7, 64 S. Ct. 397, 400 (1944) ("More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause. … [W]e reaffirm it now."); *see also Wilson v. Moore*, 346 F. Supp. 635, 643 (N.D.W. Va. 1972). As such, Plaintiffs have the burden of establishing that SL 2018-13 fails a rational basis analysis.

The Constitution leaves it to the states to regulate their elections in accordance with federal laws and the Constitution. *See Tashjian v. Republican Party*, 479 U.S. 208, 217, 107 S. Ct. 544, 550 (1986) ("… [T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices."). A court does not,

---

[3] Plaintiffs have not asserted a claim under the *Anderson/Burdick* line of cases, which address ballot access. *See Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983); *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992). Plaintiffs do not contend that SL 2018-13 is unconstitutional in its prospective application. Such a claim would require an *Anderson/Burdick* analysis. Since Plaintiffs only complain of the retroactive application of SL 2018-13 under the Due Process Clause, the *Anderson/Burdick* analysis is inapplicable. *See Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012)

8

"in the name of the Constitution, overturn duly enacted statutes simply 'because they may be unwise, improvident, or out of harmony with a particular school of thought.'" *See id.* (quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488 (1955)). Whether one agrees with the wisdom of "sore loser" laws, they nevertheless implicate legitimate state policy interests, as discussed *infra*.

    C.    "Sore Loser" Statutes, such as SL 2018-13, Have Ordinarily Been Upheld Against Constitutional Challenges as Laws that Promote Legitimate State Interests.

The trend in federal courts has been to uphold state "sore loser" regulations as a species of "ballot access" provisions that promote state interests in integrity of nomination and election processes, limit "interparty raiding," forestall "intraparty feuds" and "unrestrained factionalism", while assisting states to avoid ballot clutter and voter confusion. *See Storer v. Brown*, 415 U.S. 724 (1974); *Patriot Party v. Allegheny City Dept. of Elections*, 95 F.3d at 264-265.

The State here has a legitimate basis for the challenged portion of SL 2018-13. Pursuant to N.C.G.S. § 163-122(a), a candidate in the primary is not eligible to submit a petition as an unaffiliated candidate.

> An individual whose name appeared on the ballot in a primary election preliminary to the general election shall not be eligible to have his name placed on the general election ballot as an unaffiliated candidate for the same office in that year.

N.C.G.S. § 163-122(a). This "sore-loser" type statute has been upheld by both the Supreme Court in *Storer*, 415 U.S. at 735 and the Fourth Circuit in *Backus v. Spears*, 677 F.2d 397, 399 (4th Cir. 1982).

The Court in *Storer* concluded that California's "sore loser" statute was not unconstitutional, and "properly barred [plaintiffs] from the ballot as a result of its application." *Id.* at 736. The Court further stated that this type of statute "protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and

9

take the alternative course to the ballot." *Id.* at 735. In *Backus*, the Fourth Circuit Court of Appeals, applying *Storer*, concluded that "South Carolina certainly has the power, as a permissible adjunct to promoting orderly primary elections, to forbid petition candidacies by persons who have been defeated in party primaries." *Backus v. Spears*, 677 F.2d at 399-400.

The wrinkle in the case at hand is that SL 2018-13 applies to candidates of new parties, which have not been an issue in North Carolina prior to the current election cycle. In 2018, two new parties were recognized in North Carolina: the Green Party and the Constitution Party. Plaintiffs in this matter may be viewed as attempting to avoid the State's existing policy of regulating "sore loser" candidacies by changing their party affiliation to one of these new parties. As such, SL 2018-13 was nothing more than a logical extension of the established "sore loser" statute in that it prevented "sore loser" candidates from taking advantage of new parties in their first year of recognition. Plaintiffs themselves recognize the validity of these "sore loser" statutes in their brief. *See* D.E. #10-11. SL 2018-13 promotes legitimate state interests related to the integrity of nomination and election processes, limits "interparty raiding," forestalls "intraparty feuds," and help the State to avoid ballot clutter and voter confusion

The question remains whether Plaintiffs have failed to "demonstrate by 'a clear showing' that, among other things, they are likely to succeed on the merits at trial." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009) (*quoting Winter*, 555 U.S. at 22), *vacated on other grounds*, 559 U.S. 1089 (2010).

## II. PLAINTIFFS MUST DEMONSTRATE THE IMMEDIACY OF IRREPARABLE HARM.

Plaintiffs must also demonstrate an "actual, viable, presently-existing threat" to support preliminary injunctive relief. *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 164 (S.D.N.Y. 2010), *affirmed in part and appeal dismissed in part by*, 406 Fed. Appx. 557 (2d Cir. 2011).

10

Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Summer Wealth Mgmt., L.L.C. v. Inv. Placement Group*, No. 1:15-c-1660 (JCC/JFA), 2016 U.S. Dist. LEXIS 3734, *7 (E.D. Va. Jan. 12, 2016) (*quoting Direx Israel,Ltd. v. Breakthrough Med. Corp*., 952 F.2d 802, 812 (4th Cir. 1991)).

Plaintiffs' delay in seeking relief is inconsistent with their claim that they will suffer irreparable harm. *Phoenix Bevs, Inc. v. Exxon Mobil Corp*., No. 12-cv-3771 (DKC) (JO), 2015 U.S. Dist. LEXIS 16959, *18 (E.D.N.Y. Feb. 11, 2015). "*Laches* can, in some circumstances, serve as a defense to First Amendment claims… *Laches* is an attractive argument against … sophisticated participants in a national election who had knowledge of West Virginia's ballot access laws and should have been aware of important constitutional case law." *Nader 2000 Primary Comm., Inc. v. Hechler*, 112 F. Supp. 2d 575, 579 n.2 (S.D. W. Va. 2000)(emphasis in the original), *see also Gay Men's Health Crisis v. Sullivan*, 733 F. Supp. 619, 631 (S.D.N.Y. 1989) (suggesting that, in appropriate circumstances, *laches* could bar First Amendment claims), *Nelson v. Campbell*, 541 U.S. 637 (2004) (addressing the equitable presumption against the grant of extraordinary remedies where a claim could have been brought at such time as to allow consideration of the merits, without resort to such remedies).

In this matter, the challenged statute was enacted on June 20, 2018. News of the statute was well publicized even prior to its enactment, the Governor's veto and the General Assembly's subsequent override. Plaintiffs nerveless waited a month to bring an action, and then waited a few more weeks to seek an expedited injunction. Those belated actions contrast with Plaintiffs' now-claimed need for urgent relief.

11

Case 5:18-cv-00366-FL Document 18 Filed 08/14/18 Page 11 of 15

### III. THE BALANCE OF EQUITIES MUST TIP IN PLAINTIFFS' FAVOR, AND ANY INJUNCTION SHOULD SERVE THE PUBLIC'S INTEREST.

Plaintiffs' desire to run again for the same office in the 2018 General Election is challenged by the State's interest timely and effectively administering statewide elections. Granting a preliminary injunction at this very late stage of the election cycle presents the risk of impacting the 2018 general election, particularly in the districts plaintiffs wish to run. In any North Carolina election, a voter is presented with a single ballot that features the races applicable to that voter. If granted, Plaintiffs Motion before the Court will likely serve to delay the production of those ballots. In turn, the delay may serve to sow confusion and disorder.

### IV. THIS COURT MAY ABSTAIN FROM ISSUING A FIRST IMPRESSION OPINION THAT INTERPRETS A NEWLY ENACTED STATE STATUTE REGULATING THE CONDUCT OF STATE ELECTIONS.

This Court may abstain from undertaking a first impression analysis of the State's new "sore loser" statute. Because Plaintiffs' federal constitutional claims arise from unsettled issues surrounding the enactment of SL 2018-13, and its exclusive effects upon State and local offices, this Court possesses the discretion to abstain from exercising federal jurisdiction either on the basis of prudential concerns, or pursuant to the abstention doctrine first articulated in *Railroad Com. of Texas v. Pullman Co.*, 312 U.S. 496 (1941). To abstain under *Pullman*, the federal case should implicate (1) an open issue of state law presented for decision, (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1644, 179 L. Ed. 2d 675 (2011) (Kennedy, J., concurring); *Educational Servs. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983); *accord Meredith v. Talbot County*, 828 F.2d 228, 231 (4th Cir. 1987).

Currently, there are four cases pending in North Carolina state courts, all of which call for an interpretation of several new state statutes that purport to regulate various aspects of state elections in anticipation of the upcoming General Election. *Cooper v. Berger et al.* (Wake Cty. 18 CVS 9805), *NAACP v. Moore et al.* (Wake Cty. 18 CVS 9806), *Anglin v. Berger et al.* (Wake Cty. 18 CVS 9748) and *Edwards v. NC State Board of Elections et al.* (Wake Cty. 18 CVS 9749). Two pending state cases deal with another form of candidate challenges to the ballot, *Anglin v. Berger et al.* (Wake Cty. 18 CVS 9748) and *Edwards v. NC State Board of Elections et al.* (Wake Cty. 18 CVS 9749). From a legal perspective, this case is not differ significantly from the other two candidate challenges. Similar to those two pending state cases, this matter involves comparison of state interests against the impact of those regulations upon putative candidates for state offices in the November 2018 General Elections cycle. The state courts have already demonstrated their ability to act quickly and decisively in interpreting the new state election statutes under the state law, and granting both equitable and legal remedies where necessary. (D.E. 17, Def Ex A and B) (The issuance of a preliminary injunction within a week of the commencement of two state actions). State courts are in position to evaluate the implicated public policy based on North Carolina precedent, and to interpret a new state statute that affects state and local elections. The state's judiciary may be given the opportunity to interpret state law, and evaluate the state interests that gave rise to new "sore loser" laws in the first instance.

By applying the *Pullman* doctrine, or prudential considerations, this Court would avoid predicting what state courts might decide, and instead permits state courts the first opportunity to interpret state law. Applying abstention in favor of state court litigation addressing the impact of the new state elections statute may eliminate the need for this Court to undertake federal constitutional question. Under these circumstances, abstention is appropriate, as prudential

13

principles suggest that this Court permit the State's judicial processes address the issues pertaining to state elections under SL 2018-13.

## CONCLUSION

Defendant respectfully request the Court consider the above factors in making its determination of Plaintiffs' Expedited Motion for Preliminary Injunction.

Respectfully submitted this 14th day of August, 2018.

JOSHUA H. STEIN
Attorney General

/s/ Amar Majmundar
Amar Majmundar
Senior Deputy Attorney General
North Carolina State Bar No. 24668
Telephone: (919) 716-6821
Facsimile: (919) 716-6759
Email: amajmundar@ncdoj.gov

/s/ Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
North Carolina State Bar No. 31846
Telephone: (919) 716-0185
Facsimile: (919) 716-6759
Email: ovysotskaya@ncdoj.gov

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General
N.C. State Bar No. 45869
Telephone: (919)716-6900
Facsimile: (919) 716-6763
Email: jbernier@ncdoj.gov

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing document with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This the 14th day of August, 2018.

/s/ Amar Majmundar
Amar Majmundar
Senior Deputy Attorney General