# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# CASE NO.:5:18-cv-366-FL

| | |
|---|---|
| JAMES ALLEN POINDEXTER, JERRY JONES, GREGORY HOLT, AND THE CONSTITUTION PARTY OF NORTH CAROLINA,<br><br>Plaintiffs,<br><br>v.<br><br>KIM WESTBROOK STRACH in her official capacity as the Executive Director of the North Carolina State Board of Elections and Ethics Enforcement,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

COME NOW the Plaintiffs and pursuant to Rule 65 of the Federal Rules of Civil Procedure move the Court, to the extent required, for a temporary restraining order as to the printing of ballots for the pendency of the Court's consideration of Plaintiffs motion for preliminary injunction, and states as follows:

## NATURE OF THE CASE

Plaintiffs filed their Verified Complaint against Defendant on July 20, 2018 initiating this above-captioned action. (ECF Doc. 1) A summons was issued by the Court on July 23, 2018. (ECF Doc. 5) Defendant's counsel entered his Notice of Appearance on August 1, 2018 (ECF Doc. 6). Plaintiff's obtained service by certified mail on Defendant on August 2, 2018. (ECF Doc. 9). Plaintiffs filed their Motion for Preliminary Injunction on August 7, 2018, and submitted this Memorandum in support thereof. Defendants submitted their Response on August 14, 2018, and Plaintiffs submitted their Reply on August 15, 2018 (ECF Docs 18 & 19 respectively).

## FACTS

On or about June 6, 2018, the Constitution Party of North Carolina (the "Constitution Party") became a recognized political party under the election laws of North Carolina. (Compl. ¶ 10.) The Constitution Party, through its representatives, timely filed with the State Board of Elections and Ethics Enforcement more than the required amount of petition signatures, as well as more than 200 signatures from more than three (3) congressional districts. (*Id.*) The State Board of Elections and Ethics Enforcement then voted unanimously to recognize the Constitution Party as the state's newest political party. (*Id.*) The Constitution Party's core political values are: (1) the Right to Life; (2) Religious Freedom; (3) the Traditional Family; (4) Private Property Rights; (5) Pro-Second Amendment; (6) Anti-Socialism; and (7) Pro National Sovereignty. (*Id.* at 4.) The purpose of Constitution Party is to influence public policy by a variety of means including running candidates for public office and disseminating its views on public policy issues through its campaigns, among others. (*Id.*)

Prior to the Constitution Party becoming recognized under the elections laws of North Carolina on June 6, 2018, no voter in North Carolina could affiliate with the Party in that voter's registration. (*Id.* at 11-12.) After the Constitution Party became recognized as a political party, it held its nominating convention pursuant to the election law of North Carolina and then, prior to June 20, 2018, submitted its candidates to the Defendant via the North Carolina State Board of Elections and Ethic Enforcement. (*Id.* at 17-18.) The Defendant accepted candidates of the Constitution Party. (*Id.* at 18.) Among those Constitution Party candidates were James Allen Poindexter, Jerry Jones, and Greg Holt. (*Id.*) Prior to the recognition of the Constitution Party as a political party under the North Carolina election law, a candidate who wished to run as a Constitution Party candidate either could not run or, alternatively, had to run as an unaffiliated

candidate. (*Id.* at 11.) Likewise, voters could not register to vote as a Constitution Party of North Carolina voter. (*Id.*)

Primary elections in North Carolina for 2018 occurred on May 8, 2018 with options for second primaries occurring after on June 27, 2018, or July 17, 2018 depending on whether a federal office in the state required a second primary or not. (*Id.* at 13.) Prior to the Constitution Party gaining ballot access, Plaintiff Poindexter ran for the office for North Carolina House of Representatives, District 90, in the Republican Party primary election and lost. (*Id.* at 14.) Similarly, Plaintiff Holt ran for office for Craven County Board of Commissioners, District 1, in the Republican Party primary election and lost. (*Id.* at 15). Also, Plaintiff Jones ran for office for Greene County Board of Commissioners, District 3, in the Democratic Party primary election and lost. (*Id.* at 16.) Pursuant to the election laws governing newly recognized parties, the Constitution Party was not permitted to participate in the primary elections and was required to nominate its candidates by convention. (*Id.* at 17.) The Constitution Party held its convention and submitted its candidates for office which included Plaintiffs Poindexter, Holt, and Jones who were accepted by Defendant via the State Board of Elections and Ethics Enforcement. (*Id.* at 18.)

On or about June 5, 2018 the North Carolina General Assembly passed legislation that in part modified the provisions of the election law governing the participation of new political parties in the general election: Senate Bill 486, "AN ACT TO MAKE VARIOUS CHANGES RELATED TO ELECTION LAWS."(*Id.* at 19.) Senate Bill 486 stated that, "An individual whose name appeared on the ballot in a primary election preliminary to the general election shall not be eligible to have that individual's name placed on the general election ballot as a candidate for the new political party for the same office in that year." (*Id.* at 21.)

Senate Bill 486 went to the Governor for signing or for veto. (*Id.* at 19.) On or about June 15, 2018, the Governor vetoed Senate Bill 486 and stated that "**Continued election meddling for partisan advantage weakens public confidence.**" (*Id.*) (emphasis added). Additionally, even members of the General Assembly stated that, "Doing this [changing the election law on running as a candidate of a new party during the election process] at this time bears an appearance that it may be targeting specific individuals." (*Id.* at 27.) Another member of the General Assembly stated that "It's just going to make a mess of the system this year. It's not fair to change the rules after the game [the election] has started." (*Id.*)

After the Governor's veto of Senate Bill 486, the North Carolina General Assembly on about June 20, 2018, passed Senate Bill 486 into law, (N.C. Sess. Law 2018-13). (*Id.* at 20.) *After* Plaintiffs had exercised their rights to run as candidates of the Constitution Party of North Carolina in submitting their Notices of Candidacy to Defendant, did the General Assembly pass Senate Bill 486/ N.C. Sess. Law 2018-13 and Defendant enforce such a change prohibiting the exercise of those rights. (*Id.* at 20-22.) *After* the passage of Senate Bill 486/ N.C. Sess. Law. 2018-13, Defendant decertified the Plaintiffs as candidates of the Constitution Party. (*Id.* at 22.)

Prior to the June 20, 2018, veto override by the General Assembly and the Board's subsequent actions of decertifying Plaintiffs as candidates, there was no proscription from a candidate who lost a primary election as a candidate for another political party from becoming a candidate of a new party for the general election.

Plaintiffs' rights have been injured as a direct and proximate result of Defendant's actions. (*Id.* at 23-25.) Plaintiffs Poindexter, Jones, and Holt are directly injured by N.C. Sess. Law 2018-13 retroactively stripping them of their opportunity to run as candidates of the Constitution Party of North Carolina. (*Id.* at 24.) Defendant Constitution Party of North Carolina

4
Case 5:18-cv-00366-FL   Document 21   Filed 08/16/18   Page 4 of 12

has been directly injured by not being able to field the candidates that it nominated and approved of at its convention, among others. Furthermore, voters affiliated with Constitution Party of North Carolina have been injured by being deprived of the ability to vote for candidates of the Constitution Party of North Carolina. (*Id.* at 24.) Plaintiffs seek redress for their ballot access rights for the 2018 general election.

Additionally, there have been other challenges to similar after the fact legislation in the North Carolina Courts. Two cases involve judicial candidates and the party identifier which would appear next to those judicial candidates' names. (*See Anglin v. Berger et al*, 18-CVS-9748 & *Edwards v. N.C. State Board of Elections*, et al, 18-CVS-9749). Order entered in those cases on August 13, 2018, by the Honorable Rebecca Holt in Superior Court in Wake County enjoined the Defendant from printing elections ballots that do not include the party designations of the judicial candidates – for Anglin, Republican, and for Edwards, Democrat. On or about August 14, 2018, news outlets reported that GOP leaders had noticed an appeal of Judge Holt's decision to enjoin Defendant from printing ballots without the judicial designation of the candidates. (*GOP Leaders Appeal Party Labels Court Ruling*, https://www.wral.com/n-carolina-gop-leaders-to-appeal-judicial-race-court-ruling/17769493/ (last visited August 15, 2018.)

## ARGUMENT

The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same. *See e.g., U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006). A temporary restraining order or preliminary injunction is an extraordinary remedy which should not be granted unless there is a clear showing of both likely success and irreparable injury. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). The Supreme Court has stated that the

movant must establish the following to obtain a temporary injunction or preliminary injunction: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7 (2008). Plaintiffs satisfy these requirements.

**Likelihood of Success on the Merits[1]**

Plaintiffs here are likely to have success on the merits challenging the application of N.C. Sess. Law 2018-13 (Section 3.4). Plaintiffs challenge N.C. Sess. Law 2018-13 for its impermissible burden on their First Amendment rights. State elections regulations often "implicate substantial voting, association and expressive rights protected by the First and Fourteenth Amendments." *Pisano v. Strach*, 743 F.3d 927, 932 (4th Cir. 2014). The First Amendment, as incorporated against the states by the Fourteenth Amendment, protects the rights of individuals to associate for the advancements of political beliefs and ideas. *Sarvis v. Alcorn*, 826 F.3d 708, 716 (4th Cir. 2016). It is "beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983). Here, N.C. Sess. Law 2018-13 severely burdens Plaintiffs rights by taking those rights away after such rights were vested. Moreover, a law or regulation cannot arguably be more severe than to take away a right after it has been exercised [2]

---

[1] Plaintiffs, pursuant to Rule 10 of the Federal Rules of Procedure, incorporate by reference their arguments made in their Memorandum in support of motion for preliminary injunction and their Reply in support of motion for preliminary injunction as if fully set out herein.

[2] Election laws that place "severe" burdens upon constitutional rights are subject to strict scrutiny: "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)*; see also, Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 184-85 (1979) (severe restrictions must be the least drastic means to serve the compelling interest).

and, at the very least, the Defendant's restriction is not the least drastic means to its purported ends.[3] Therefore, Plaintiffs are likely to be successful in their challenge.

Also, Plaintiffs challenge N.C. Sess. Law 2018-13 for its violation of their due process rights. Retroactivity is disfavored in the law, *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855, (1990). "Retroactive legislation," we have explained, "presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992). Where the retroactive application of a law implicates First Amendment rights, "rigorous adherence" to due process is required lest exercise of those rights be chilled. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012

Due process contains both substantive and procedural components. *Snider Int'l Corp. v. Town of Forest Heights*, 739 F. 3d 140, 145 (4th Cir. 2014). Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness. *Id.* At bottom, procedural due process requires fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976). Also, it "is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Anderson v. Celebreze*, 460 U.S. 780, 787 (1983). The Court in *Anderson* noted that state action can burden two different, although overlapping kinds of rights – "the right of individuals to associate for the advancement of

---

[3] The burden is severe because it affect Plaintiffs' rights "at the most crucial stage in the election process – the instant before the vote is cast." *Cook v. Gralike*, 531 U.S. 510, 525 (2001).

7

political beliefs," and the rights of qualified voters, regardless of their political persuasion, to cast their votes effectively" and that both of those rights "rank among our most precious freedoms." *Id*. The Supreme Court has also stated that "The exclusion of candidates also burden voters freedom of association because an election campaign is an effective platform for the expression of views on the issues of the day." *Id* at 787-788.

Here, Plaintiffs were not provided due process of the decision to decertify their candidacies for the 2018 general election and the corresponding First Amendments rights noted above. Instead, the Defendant retroactively stripped the Plaintiffs of their rights and corresponding liberty interests after previously accepting them.[4] Plaintiffs were not provide fair notice and nor an opportunity to be heard. Plaintiff's rights were eliminated in the midst of the election process. Plaintiffs' due process rights unquestionably have been harmed.

Even in cases where so-called sore loser laws have been upheld, those laws were not enacted and enforced during the election process in such a targeted and discriminatory way as these circumstances indicate.[5] *See Storer v. Brown*, 677 U.S. 724 (1974) (upholding a sore-loser provision which was applied to a candidate's 1972 campaign which was enacted in 1962). Conversely, in the case at bar, Senate Bill 486/ N.C. Sess. Law 2018-13 was enacted and enforced <u>after</u> Plaintiffs acted upon a right and then had that right chilled. Plaintiffs had no notice of the proscription because the law was passed, over the Governor's veto, <u>after</u> the Plaintiffs had submitted their Notices of Candidacy and their candidacies were accepted by Defendant. Only

---

[4] Retroactive changes in elections laws can be patently unfair to candidates who followed pre-existing election rules and procedures. *See Roe v. Alabama,* 43 F 3d 564, 580-81 (11th Cir. 1995).
[5] *See S.C. Green Party v. S.C. State Election Com'n*, 612 F. 3d 752 (2010) (where in 2008, a minor party candidate in a fusion election was prohibited from running as the Green Party candidate based upon South Carolina's sore-loser statute which had been in effect since 1982); *see also*, *Backus v. Spears*, 677 F. 2d 397 (1982) (where a loyalty oath prevented an independent candidate who had previously lost in a primary from running as an independent in the 1981 general election whereby the statutory proscription had been in place at least since 1977).

after the passage of Senate Bill 486/ N.C. Sess. Law 2018-13, were the Plaintiff's rights retroactively revoked. Plaintiffs have expended time and resources to qualify for the ballot and had a legitimate expectation that having complied with the process that was in place, they would have the opportunity to reap the political benefits of running candidates and running as candidates in the 2018 general election. Plaintiffs are likely to be successful on the merits.

**Likelihood of Irreparable Harm**

An applicant must demonstrate that in the absence of a preliminary injunction, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. *Winter*, 555 U.S. at 22. Here, Plaintiffs have suffered and will continue to suffer harms to their First Amendment rights when ballots are printed in the pendency of a decision of Plaintiffs' motion. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (stating that "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury.") It is imminent that ballots will be printed depending on the result of state court matters mentioned herein, (*See* ECF Doc. 17-1 &17-2), and without resolution of Plaintiffs' motion, Plaintiffs will suffer injury from such printing of ballots.

**Balance of Equities**

The balance of equities favors the Plaintiffs. Plaintiffs have suffered harm to their First Amendment rights and the rights of voters likewise have been harmed as a result as discussed above. Conversely, Defendant will suffer no injury should the Court enjoin the printing of ballots while the Court decides the Plaintiffs' motion on preliminary injunction as to the application of N.C. Sess. Law 2018-13 for the 2018 general election. Additionally, while the lower court in the judicial candidates cases entered preliminary injunction for the plaintiffs in those cases, (*See* ECF Doc. 17-1 &17-2), those matters have been appealed and, as such, the printing of ballots, at

least in part, has been halted. Therefore, the Defendant would suffer no injury if the status quo on printing ballots remains while this Court decides the Plaintiffs' motion.

**Public Interest**

The public will benefit from the relief requests as such relief will ensure that while the Court is deciding Plaintiffs' motion that Defendant (depending the outcome of the state court cases referenced in ECF Doc 17) will not print ballots which will have to be re-printed if Plaintiffs are successful in their Motion. Efficient use of resources and the protection of Plaintiffs' constitutional rights, as discussed above, will serve the public interest. *See League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 248 (4th Cir. 2014) (quoting *Newsome v. Albermarle Cnty. Sch. Bd.,* 354 F.3d 249, 261 (4th Cir. 2003) (stating that "upholding constitutional rights serves the public interest.").

Plaintiffs further request that the Court dispense with security altogether because the grant of relief requested herein carries no risk of loss to Defendant. *See Pashby v. Delia*, 709 F.3d 307, 332 (2013) (stating that the Court may waive such a security requirement but that the Court does need to address such requirement).

## CONCLUSION

Plaintiff move the Court for a temporary restraining order to enjoin the printing of ballots for the 2018 general election to the extent that the Court requires time to decide Plaintiff's motion for preliminary injunction on its merits.

Respectfully submitted, this the 16th day of August, 2018.

              MARTINEAU KING, PLLC

              /s/ S. Mark Henkle
              S. Mark Henkle, Esq.
              N.C. State Bar No. 49265

P.O. Box. 241268
Charlotte, NC 28224
Tel: 704-247-8525
Fax 704-247-8582
mhenkle@martineauking.com
*Attorney for Plaintiffs*


Elizabeth A. Martineau, Esq.
P.O. Box. 241268
Charlotte, NC 28224
Tel: 704-247-8524
Fax 704-247-8582
emartineau@martineauking.com
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of the same to all counsel of record in this matter.

This 16th day of August, 2018.

        MARTINEAU KING, PLLC

        /s/ S. Mark Henkle
        S. Mark Henkle, Esq.
        N.C. State Bar No. 49265
        P.O. Box. 241268
        Charlotte, NC 28224
        Tel: 704-247-8525
        Fax 704-247-8582
        mhenkle@martineauking.com
        *Attorney for Plaintiffs*

        Elizabeth A. Martineau, Esq.
        P.O. Box. 241268
        Charlotte, NC 28224
        Tel: 704-247-8524
        Fax 704-247-8582
        emartineau@martineauking.com
        *Attorney for Plaintiffs*