IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-366-FL

| | | |
|---|---|---|
| JAMES ALLEN POINDEXTER, JERRY JONES, GREGORY HOLT, and CONSTITUTION PARTY OF NORTH CAROLINA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| KIM WESTBROOK STRACH, in her official capacity as the Executive Director of the North Carolina State Board of Elections and Ethics Enforcement, | ) ) ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court on plaintiffs' motion for permanent injunction (DE 27), defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (DE 29), and plaintiffs' motion for attorney's fees (DE 35). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons stated below, plaintiffs' motion for permanent injunction is denied as moot, defendants' motion to dismiss is granted, and plaintiffs' motion for attorney's fees is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff Constitution Party of North Carolina and its candidates, plaintiffs James Allen Poindexter ("Poindexter"), Jerry Jones ("Jones"), and Gregory Holt ("Holt"), filed suit on July 20, 2018, against defendant Kim Westbrook Strach, in her official capacity as the Executive Director of the North Carolina State Board of Elections and Ethics Enforcement ("Board"), alleging N.C.

Gen. Stat. § 163A-953, as recently amended by 2018 North Carolina Session Law 2018-13, § 3.4, effective June 20, 2018, ("S.L. 2018-13"), is unconstitutional as applied to plaintiffs in that this recently enacted law has been applied retroactively, removing plaintiffs from the ballot for the upcoming North Carolina general elections in 2018 where plaintiffs were otherwise qualified and had been approved to appear on the ballot. Plaintiffs challenge the legislation on the grounds that it violates plaintiffs' rights of free speech and association as protected by the First and Fourteenth Amendments to the Constitution and rights of due process under the Fourteenth Amendment to the Constitution. Plaintiffs seek injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

On August 7, 2018, plaintiffs filed motion for preliminary injunction. Approximately two weeks later, the court granted plaintiffs' motion for preliminary injunction, enjoining defendant during the pendency of this litigation from enforcing S.L. 2018-30 against plaintiffs or otherwise issuing or causing any applicable county Board of Elections to issue any official state publication to the voting public which does not have plaintiffs Poindexter, Jones, and Holt listed on the ballot.

On October 1, 2018, plaintiffs filed the instant motion for permanent injunction, requesting that this court permanently enjoin defendant from retroactively applying S.L. 2018-30 as to plaintiffs for North Carolina's 2018 general election, and allow plaintiffs Poindexter, Jones, and Holt to be given ballot access for the 2018 general election. The same day, defendant filed the instant motion to dismiss, arguing that the case was moot because plaintiffs had been included on the 2018 general election ballot. Plaintiffs responded in opposition, arguing that the election had not been held yet and that their requests for declaratory and injunctive relief for the 2018 general election still presented a live controversy.

On November 6, 2018, plaintiffs moved for attorney's fees, submitting declarations from Elizabeth Martineau ("Martineau"), Mark Henkle ("Henkle"), and Jason Benton ("Benton"), together with client invoices identifying hours billed and services rendered by Martineau and Henkle. Defendant responds in opposition to the motion, arguing that the rate billed for services is not reasonable, and that the amount of time billed is not reasonable.

## STATEMENT OF THE FACTS

The parties do not disagree on the material facts. On or about June 6, 2018, the Constitution Party of North Carolina became a recognized political party under the elections laws of North Carolina. (Compl. (DE 1) ¶ 10). The Constitution Party of North Carolina, through its representatives, timely filed with the Board more than the required amount of petition signatures, as well as more than 200 signatures from more than three congressional districts. (Id.). The Board then voted unanimously to recognize the Constitution Party of North Carolina as the state's newest political party. (Id.).

Until June 6, 2018, this party did not have access to the ballot in North Carolina and could not nominate candidates. (Id.). Likewise, voters could not register to vote as a Constitution Party of North Carolina voter. (Id. ¶ 11). Prior to this party becoming recognized under the elections laws of North Carolina, no voter in North Carolina could affiliate with the party in that voter's registration. (Id. ¶ 12).

Primary elections in North Carolina for 2018 occurred on May 8, 2018, with options for second primaries occurring after June 27, 2018, or July 17, 2018. (Id. ¶ 13). Prior to the ballot access recognition of the Constitution Party of North Carolina, plaintiff Poindexter ran for the office for North Carolina House of Representatives, District 90, in the Republican Party primary election

and lost. (Id. ¶ 14). Similarly, plaintiff Holt ran for office for Craven County Board of Commissioners, District 1, in the Republican Party primary election and lost. (Id. ¶ 15). Finally, plaintiff Jones ran for office for Greene County Board of Commissioners, District 3, in the Democratic Party primary election and lost. (Id. ¶ 16).[1]

Pursuant to the election laws governing newly recognized parties, the Constitution Party of North Carolina was not permitted to participate in the primary elections and was required to nominate its candidates by convention. (Id. ¶ 17). After the Constitution Party of North Carolina held its convention, it submitted its candidate list, which included plaintiffs Poindexter, Jones, and Holt. (Id. ¶ 18). The candidates were accepted by the Board. (Id.).[2]

On or about June 5, 2018 the North Carolina General Assembly passed Senate Bill 486, "An Act to Make Various Changes Related to Election Laws," that in part modified the provisions of the election law governing the participation of new political parties in the general election. (Id. ¶ 19). The bill went to the Governor for signing or for veto. (Id.). On or about June 15, 2018, the Governor vetoed Senate Bill 486, stating "[c]ontinued election meddling for partisan advantage weakens public confidence." (Id.).

The North Carolina General Assembly, on or about June 20, 2018, overrode the Governor's veto and passed Senate Bill 486 into law as S.L. 2018-13. (Id. ¶ 20). S.L. 2018-13 states in pertinent part that

> An individual whose name appeared on the ballot in a primary
> election preliminary to the general election shall not be eligible to

---

[1] Defendant alleges that plaintiff Jones was previously affiliated with the Republican, not Democratic, party. (DE 18 at 2). This distinction is not material to the court's present analysis.

[2] Consistent with the parties' arguments, the court presumes this acceptance means that these candidates were approved to be on the ballot for the forthcoming 2018 election.

> have that individual's name placed on the general election ballot as a candidate for the new political party for the same office in that year.

(Id. ¶ 21(citing S.L. 2018-13)).

Thereafter, on or about June 21, 2018, the Board decertified candidates Poindexter, Jones, and Holt. (Id. ¶ 22).

Pursuant to the court's order granting preliminary injunction, defendant printed and made available to the public ballots that listed plaintiffs Poindexter, Jones, and Holt as candidates for public office. (See Poindexter Sample Ballot (DE 30-1) at 1; Jones Sample Ballot (DE 30-2) at 1; Holt Sample Ballot (DE 30-3) at 1). The statewide general election for both state and federal offices was held on November 6, 2018.

## DISCUSSION

A.  Defendant's Motion to Dismiss (DE 29)

   1.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac

R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

    2.    Analysis

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Id. at 91. Where a disputed election has already been conducted, "an injunction against conducting it would now be meaningless." Backus v. Spears, 677 F.2d 397, 398 (4th Cir. 1982). This is true in instances where a "change in status ensure[s] that [plaintiffs] would never again be bound by the limit they are challenging." Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n, 814 F.3d 221, 229 (4th Cir. 2016); but see Lux v. Judd, 651 F.3d 396, 401 (4th Cir. 2011) (internal citation omitted) (explaining election disputes may still present live controversies if "there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles").

Plaintiffs' complaint alleges S.L. 2018-13 is unconstitutional as retroactively applied to remove plaintiffs from the ballot for the North Carolina general elections in 2018. The court granted preliminary injunction ordering plaintiffs be included on the ballot for the 2018 general election, and enjoined defendant from enforcing S.L. 2018-13. Defendant complied with the terms of the court's injunction and added plaintiffs to the ballot. (See Poindexter Sample Ballot (DE 30-1) at 1; Jones Sample Ballot (DE 30-2) at 1; Holt Sample Ballot (DE 30-3) at 1). To date, the preliminary injunction has remained in effect. (See Prelim. Inj. (DE 22) at 16 (enjoining defendant during the

pendency of this litigation from retroactively enforcing S.L. 2018-30 against plaintiffs)). The 2018 general election was held November 6, 2018, thereby mooting any need for the permanent declaratory or injunctive relief requested by plaintiffs. (See Mot. for Perm. Inj. (DE 27) (requesting that the court "permanently enjoin Defendant for the 2018 general election from enforcing N.C. Sess. Law 2018-13 to Plaintiffs and guarantee Plaintiffs full rights in participation in such election")).

Even though plaintiffs may be subject to S.L. 2018-13 in future election years, their case is an as-applied constitutional challenge based on retroactive application of the law. Any application of S.L. 2018-13 in future years to plaintiffs would be prospective, rather than retroactive. Therefore, plaintiffs will never again be subject to the as-applied limitations placed on them by S.L. 2018-13. See Stop Reckless Econ. Instability Caused by Democrats, 814 F.3d at 229.

Plaintiffs argue that "the [c]ourt's authority to ensure that [S.L.] 2018-13 is not applied to [p]laintiffs for the 2018 general election and its order ensuring the same, is not mooted until the 2018 general election has occurred." (Pl. Resp. (DE 34) at 10). At the time plaintiffs filed their response, they were correct that defendant's motion to dismiss was premature. However, since plaintiffs' response, the 2018 general election has occurred. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Therefore, plaintiffs' case is moot.

The court grants defendant's motion to dismiss for lack of subject matter jurisdiction, and denies as moot plaintiffs' motion for permanent injunction.

B.  Plaintiffs' Motion for Attorney's Fees (DE 35)

In any action or proceeding to enforce 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "A plaintiff must be a prevailing party to recover an attorney's fee under § 1988." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (internal quotations omitted). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. (internal quotations omitted). Here, plaintiffs successfully obtained a preliminary injunction, and therefore are properly considered a prevailing party.

To determine if the fees sought are reasonable, the court follows a three step process. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). First, the court calculates the lodestar amount, based on the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243–44 (4th Cir. 2009) (internal citations omitted). "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008). To determine the reasonableness of the hourly rate claimed, the court looks to "the prevailing market rates in the

8

relevant community," McAfee, 738 F.3d at 91 (internal quotation marks and citation omitted), for similar work performed by attorneys of "reasonably comparable skill, experience, and reputation," Blum v. Stenson, 465 U.S. 866, 895 n.11 (1984).

"[A]fter calculating the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. (internal quotations omitted). "Finally, [o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Robinson, 560 F.3d at 244 (internal quotations omitted).

Martineau testifies her hourly billable rate is based on her approximately 20 years of legal experience, has litigated various civil rights claims throughout her career, is a member of the bar in this district and several other courts, and practices law in the Charlotte market. (Martineau Decl. (DE 35-1) ¶¶ 2-4, 7). Henkle had approximately three years of legal experience at relevant times during this litigation, is a member of the bar of several courts in this state, represents clients in civil rights and intellectual property disputes, and also practices law in the Charlotte market. (Henkle Decl. (DE 35-2) ¶¶ 2-4, 7). Martineau and Henkle both testify that their rate is reasonable for the types of claims pursued in this litigation, their respective experience, the complexity and novelty of the claims pursued in this litigation, and the legal rates in the legal community. (Martineau Decl. (DE 35-1) ¶ 6; Henkle Decl. (DE 35-2) ¶ 6). In addition, Benton, a partner at Parker, Poe, Adams & Bernstein, LLP, who routinely handles § 1983 litigation, testifies that Martineau and Henkle have reasonable billing rates. (See Benton Decl. (DE 35-3) ¶¶ 6-10). Plaintiffs have produced satisfactory evidence that their hourly rate is reasonable. See McAfee, 738 F.3d at 91.

Turning to hours expended, the court concludes that plaintiffs have shown that the time expended on this matter, approximately 108.4 hours for Henkle, and 2.0 hours for Martineau, is generally reasonable in light of the significant amount of time typically expended in § 1983 cases and elections cases in particular. See, e.g., Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections, No. 5:13-CV-607-D, 2017 WL 4400754, at *7 (E.D.N.C. Sept. 29, 2017); Messmer v. Harrison, No. 5:15-CV-97-BO, 2016 WL 316811, at *4 (E.D.N.C. Jan. 26, 2016).

Having determined the lodestar amount is reasonable, the court must separate the successful claims from the unsuccessful ones. Plaintiffs did not prevail in seeking temporary restraining order and motion for permanent injunction, both of which have been denied as moot. Additionally, the court removes 1.5 hours spent by Henkle helping plaintiff Poindexter file to run for office, which is not part of this litigation. The court reduces Martineau's hours by 0.5 and Henkle's hours by 17.7. Martineau's reduced hours of 1.5 and Henkle's hours of 90.7 are reasonable in prosecuting this action.

Finally, the court considers the amount of success enjoyed by counsel's client. Here, plaintiffs received the relief that they requested in the form of a preliminary injunction. Defendant was required to add plaintiffs to the 2018 general election ballot and enjoined from retroactively enforcing S.L. 2018-30. Although counsel did not obtain a temporary restraining order or permanent injunction, they achieved their clients' objectives. Accordingly, the court awards the following: $525.00 in attorney's fees for Martineau, and $22,675.00 in attorney's fees for Henkle.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for permanent injunction (DE 27) is DENIED AS MOOT, defendant's motion to dismiss for lack of subject matter jurisdiction (DE 29) is GRANTED. Plaintiffs' motion for attorney's fees (DE 35) is GRANTED IN PART and DENIED IN PART. The court awards plaintiff $525.00 for services rendered by Elizabeth Martineau, and $22,675.00 for services rendered by Mark Henkle, to be paid by defendant. The clerk is DIRECTED to close this case.

SO ORDERED, this the 13th day of June, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge